UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA SYROWIK,

  Plaintiff,

v.              Case No.: 2:20-cv-744-FtM-38MRM

VINEYARDS DEVELOPMENT
CORPORATION,

  Defendant.
_____/

## OPINION AND ORDER[1]

Before the Court is Plaintiff Linda Syrowik's Motion to Remand (Doc. 12), Defendant Vineyards Development Corporation's response in opposition (Doc. 13), and the parties supplemental briefs (Docs. 15; 17). The Court grants the Motion.

## BACKGROUND

Syrowik worked for Vineyards. Eventually, Vineyards laid off Syrowik (and all its other employees) after finishing a development project (the "Project"). A decade and a half ago, Vineyards sent Syrowik a memorandum (the "Memo"), which provided the terms of Vineyard's Employee Longevity

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

Severance & Retirement Program (the "Program"). The Program entitled employees to severance if they worked until the Project ended along with other eligibility requirements. And the Memo outlined the formula for calculating severance under the Program.

After getting let go, Syrowik demanded severance. But Vineyards failed to pay out the amount due under the Program. So Syrowik sued, alleging four state-law claims to recover the unpaid severance. Vineyards removed based on federal question.

## LEGAL STANDARD

"In a motion to remand, the removing party bears the burden of showing the existence of federal jurisdiction." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). Courts "construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party." *Id.*

Defendants can remove based on federal-question jurisdiction. 28 U.S.C. §§ 1331, 1441(a). A federal question must appear on the face of a well-pled complaint. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002). So a party cannot remove based on a federal defense, "including the defense of preemption." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). That is the well-pled complaint rule in a nutshell, but it has exceptions. One is complete preemption (sometimes called "super

2

preemption"). *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009).

## DISCUSSION

Vineyards contends ERISA completely preempts Syrowik's claims, vesting the Court with jurisdiction. Not so, says Syrowik.

ERISA is unique because it creates two kinds of preemption: complete and conflict. *Id.* This distinction is important because the former is jurisdictional while the latter is an affirmative defense. *Id.* at 1344.

Complete preemption "exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim." *Id.* at 1343. For ERISA, complete preemption applies to claims arising from its civil enforcement provision (§ 502(a) or 29 U.S.C. § 1132(a)). *Id.* at 1344. So "causes of action within the scope" of those provisions are "removable to federal court." *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 66 (1987).

To determine whether ERISA completely preempts a state-law claim, a two-part test applies. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *Conn. State*, 591 F.3d at 1344-45. That inquiry asks—"(1) whether the plaintiff could have brought its claims under § 502(a); and (2) whether no other legal duty supports the plaintiff's claims." *Conn. State*, 591 F.3d at 1345. Two conditions are necessary to meet the first prong: "(1) the plaintiff's claim must

fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Id.* at 1350. For a claim to fall within ERISA's scope, there must be an ERISA plan. *Garcon v. United Mut. of Omaha Ins.*, 779 F. App'x 595, 597-98 (11th Cir. 2019); *see* 29 U.S.C. § 1132(a); *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015).

Mostly, Syrowik contends the Program is not a "plan" under ERISA. The Court agrees.

A severance plan may be within the ambit of ERISA. *Massachusetts v. Morash,* 490 U.S. 107, 116 (1989). And it is clear the Program intended to provide severance benefits. Still, ERISA does not cover the Program unless it is a "plan." *Anderson v. UNUMProvident Corp.*, 369 F.3d 1257, 1263 (11th Cir. 2004). This analysis doesn't turn on whether an employer "intended the plan to be governed by ERISA." *Id.* at 1263-64. Instead, it relies on whether an employer "intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship." *Id.* at 1264.

The mere "decision to extend benefits is not the establishment of a plan or program." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc); *id.* (noting "it is the reality of a plan . . . and not the decision to extend certain benefits that is determinative"). Instead, to decide whether a plan was established, courts look at the "surrounding circumstances" to see if "a reasonable person can ascertain the intended benefits, a class of beneficiaries,

4

the source of financing, and procedures for receiving benefits." *Id.* This is a "flexible analysis." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1330 (11th Cir. 1998) (citation omitted).

Syrowik challenges the existence of an ERISA plan on several grounds. Some of those may be insufficient on their own. But taken together, it is clear the Program is not an ERISA plan.

Up first are the portions leaning towards finding ERISA coverage. The Memo defines the universe of employees entitled to severance. An employee must be full time, after a certain date, employed by specific entities, outside certain positions, and working until laid off by Vineyards' CEO "for lack of work" and not for cause. (Doc. 3-1). The Memo also clarifies how to calculate the amounts of severance to which eligible employees are entitled when the Project ends. In other words, it is possible to ascertain the Program's intended benefits and class of beneficiaries from reasonably reading the Memo. *Donovan*, 688 F.2d at 1373. While those factors weigh in Vineyards' favor, this is where the tide turns.

Syrowik knocks the Program because the Memo does not provide funding sources. That is true. Yet it is not fatal because the funds could come from Vineyards' general assets. Paying severance out of general assets does not remove a plan from ERISA's coverage. *E.g.*, *Williams v. Wright*, 927 F.2d 1540, 1544 (11th Cir. 1991). To be sure, however, an employer using general assets

5

rather than a separate fund can weigh against finding an established ERISA plan. *Stern v. Int'l Bus. Machs. Corp.*, 326 F.3d 1367, 1372-73 (11th Cir. 2003). While severance pay outs apparently coming from general assets weakens Vineyards' position, the fact does not doom its cause. *See Woods v. Radiation Therapy Servs., Inc.*, No. 2:16-cv-897-FtM-29MRM, 2017 WL 727766, at *6-7 (M.D. Fla. Feb. 24, 2017).

Likewise, Syrowik pointing out Vineyards' failure to comply with its ERISA reporting obligations cannot carry the day on its own. *Donovan*, 688 F.2d at 1372; *Williams*, 927 F.2d at 1544. Yet this is a flexible analysis looking at all the surrounding circumstances. So it's worth noting this record does not reveal Vineyards in any way administered the Program, complied with ERISA reporting obligations, or undertook fiduciary duties in the last fifteen years. And the lack of that activity does not inspire confidence for finding a plan.

Where Syrowik really starts getting wind in her sails is by challenging the murky procedure for receiving benefits under the Program. Simply put, there is no way for a reasonable person to ascertain how a Vineyards employee can go about receiving benefits based only on the Memo. This is because the Memo doesn't address a procedure. While Vineyards points to eligibility requirements, those are not procedures for how to receive benefits. The

requirements just identify a class of beneficiaries.[2] Again, the lack of any procedure whatsoever may not be dispositive. *See Fannaly v. LEI, Inc.*, No. 20-1940, 2020 WL 5640887, at *6 (E.D. La. 2020). But Vineyards offers nothing from which the Court can conclude there was an informal system in place to guide employees in receiving benefits or challenging denials. With no indication employees could determine procedures to receive benefits, this is a strong sign no ERISA plan existed. *See Whitt*, 147 F.3d at 1330-31.

Related to this factor is a principle set out in *Fort Halifax*, which provides the jurisdictional knockout blow.[3] *Williams*, 927 F.2d at 1544. That case considered whether ERISA preempted a state statute demanding lump-sum severance upon a plant closure. Where relevant, the Supreme Court held, "Neither the possibility of a one-time payment in the future, nor the act of making such a payment, in any way creates the potential for the type of conflicting regulation of benefit plans that ERISA pre-emption was intended to prevent." *Fort Halifax*, 482 U.S. at 14. The Court explained, "The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying

---

[2] Vineyards' citation of *Donovan* in this regard is unavailing as the case does not stand for the proposition asserted. Rather, *Donovan* simply concluded it was enough for an employer to rely on the procedures set forth in an insurance policy. *Randol v. Mid-W. Nat'l Life Ins. Co. of Tenn.*, 987 F.2d 1547, 1550 & n.5 (11th Cir. 1993).

[3] *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987).

benefits." *Id.* at 12. So severance benefits contingent on some uncertain event may not constitute an ERISA plan if (depending on the facts) an employer must "do little more than write a check." *Id.*

*Fort Halifax* is on point. A single event triggers benefits due under the Program (i.e., the end of the Project). When that event occurs, all Vineyards must do is mechanically determine which employees it owes severance. There is no discretion for Vineyards to make any eligibility decisions. Nor did Vineyards assume "responsibility to pay benefits on a regular basis." *See id.* Rather, it must simply pay out a set amount of severance when the Project ends. Because the Project ended, Vineyards can cut a check to all eligible employees and it will fulfill the Program. In circumstances like these, courts hold that benefits do not qualify as an EIRSA plan under *Fort Halifax*.[4]

Vineyards makes four arguments in response. Yet each falls flat.

First, Vineyards says—without support—it may pay out severance in a manner other than a lump sum. But nothing in the record supports that notion. The sole evidence of the Program is the single-page Memo. And its only reasonable reading suggests severance is due as a lump sum when the Project ends. (Doc. 3-1) ("At the end of the Vineyards project, *the amount due* the employee will be calculated." (emphasis added)). There is nothing in that

---

[4] *E.g.*, *Cantrell v. Briggs & Veselka Co.*, 728 F.3d 444 (5th Cir. 2013); *Crews v. Gen. Am. Life Ins.*, 274 F.3d 502 (8th Cir. 2001); *Fannaly*, 2020 WL 5640887.

document conferring Vineyards with discretion to structure its payouts. Nor has Vineyards offered evidence for that practice. A lump-sum payout is Syrowik's understanding too, and the Complaint demands the total severance allegedly due. (Doc. 3 at 3). So Vineyards' empty-handed assertion comes up short.

Second, Vineyards also tries to write into the Memo discretion over eligibility determinations. But like above, that discretion doesn't exist on these facts. The Memo identifies the class of employees eligible for severance. Eligible employees worked full time, after 2005, in certain positions, for specific entities, until Vineyards CEO released them for lack of work and not for cause. These are readily determinable facts not implicating the subjective decisions by plan administrators that might trigger ERISA. Simply put, Vineyards does not have any authority to make discretionary eligibility decisions; it just mechanically determines who is eligible based on set, historical facts.

Vineyards says these decisions still distinguish *Fort Halifax*. It's mistaken. In that case, there were several eligibility determinations to make when a plant closed. Each employee was only entitled to severance if (1) the plant had 100 or more employees or relocated operations over 100 miles away; (2) the employee worked at the plant for over three years; (3) the employee did not accept employment at a new plant; and (4) the employee was not party to a contract covering severance pay. 482 U.S. at 5. What's more, each employee

9

was entitled to different amounts of severance reflecting one week for each year they worked. *Id.* All those determinations happened after the plant closure, yet this still was not enough for ERISA to preempt. So *Fort Halifax* is not as narrow as Vineyards suggests, and the few eligibility determinations it must make are not enough.

Relatedly, Vineyards points to its CEO having the power to release employees for lack of work. To be eligible for severance, an employee must be let go by the CEO "for lack of work, and not for cause." (Doc. 3-1). But that matter is irrelevant to the separate question of whether a plan administrator—who the Memo never identifies—can make their own decision on that release. Put another way, the discretion CEO holds over the *personnel* decision to terminate an employee doesn't concomitantly grant the plan administrator any *benefit eligibility* discretion. And even if Vineyards did have some eligibility discretion, this fact is unpersuasive. *See, e.g.*, *Cantrell*, 728 F.3d at 452 (holding an employer's discretion to determine if a termination was "with cause" was not "enough to necessitate an ongoing administrative scheme").

Third, Vineyards argues the severance due is not a fixed amount and it must calculate payments. This is a nonstarter. The Program requires a one-time calculation at the end of the Project. And the Memo fixes that calculation. (Doc. 3-1 (providing employees severance in "an amount of money equal to a percentage of their annual salary")). This is not a detailed formula, but

10

grammar-school arithmetic. While the severance due may vary by employee, the fact Vineyards might need to use a calculator to figure out each eligible employee's severance does not implicate ERISA.

And fourth, Vineyards contends it must continually monitor and keep records of Program. But like the other efforts, this fails. The Program does not implicate a need for an ongoing administrative scheme or practice to meet Vineyards' obligations. *Fort Halifax,* 482 U.S. at 12. Nor do any continuing obligations exist. All that Vineyards assumed responsibility for doing is determining what employees are eligible when the Project ended and paying them severance. Nothing needed to be done over the Program in the last fifteen years. And on this record, Vineyards did nothing with the Program during that time.

Because the Program is not an ERISA plan, "the doctrine of complete preemption is inapplicable and no federal question jurisdiction exists." *Stern,* 326 F.3d at 1374. So "removal to federal court was improper," and the Court must remand. *Id.*

As to Syrowik's request for fees, however, the Court denies the Motion. It is true 28 U.S.C. § 1447(c) permits discretion to award costs and fees in a remand order. Yet award must be "just." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 138-39 (2005). So fees are usually only proper if the "removing party lacked an objectively reasonable basis for seeking removal." *J.P. v.*

11

*Connell*, 93 F. Supp. 3d 1298, 1303 (M.D. Fla. 2015) (quoting *Martin*, 546 U.S. at 141). The Court does not find that to be the case here. And even if it did, Syrowik's perfunctory request buried in a motion to remand that does not articulate an entitlement to fees or identify them is not enough. *See Rocca v. Nat'l Specialty Ins.*, No. 2:20-cv-64-FtM-38MRM, 2020 WL 6036882, at *3 (M.D. Fla. Feb. 24, 2020).

Accordingly, it is now **ORDERED:**

(1) Plaintiff's Motion to Remand (Doc. 12) is **GRANTED in part**.

  a. The Motion is **GRANTED** as to remand **for lack of subject-matter jurisdiction**.

  b. The Motion is **DENIED** as to attorney's fees.

(2) The Clerk is **DIRECTED** to **REMAND** this case to the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida. The Clerk is **DIRECTED** to transmit a certified copy of this Order to the Clerk of that Court.

(3) The Clerk is **DIRECTED** to terminate any pending motions or deadlines and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on January 12, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record